**KOUBECK, Plaintiff, v. FAIRVIEW PARK HOSPITAL, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 690589.

Spangenberg, Hasenflue & Shibley, Cleveland, for plaintiff.

Hauxhurst, Sharp, Cull & Kellogg, McAfee, Hanning, Newcomer & Hazlett, Cleveland, for defendant.

## OPINION

By NICOLA, J.:

The plaintiff in his petition charges that the defendant hospital was negligent in the treatment of an injury to his right knee suffered by the plaintiff. As set forth in the petition, the plaintiff claims that the injury happened on the 18th day of January, 1956. While the plaintiff

was putting up an awning on a private home, he received an injury when the ladder he was working on slipped. He rode the ladder and fell on an evergreen tree and a limb thereof was caused to run into his right knee.

Shortly thereafter he was taken to the defendant hospital and treated by the defendant in a negligent fashion and that he has suffered permanent injuries. As a direct and proximate result of the defendant's negligence in six particulars set forth in said petition, the plaintiff's knee became swollen, inflamed and infected; that it was a long period of time before said condition could be sufficiently overcome to permit his knee to be operated upon; that the free use, strength and motion in said area has been permanently affected; that his leg is permanently stiff and two inches shorter than normal; that he has in the past and will in the future for an indefinite period of time continue to suffer great pain both in body and mind. Plaintiff prays for judgment against defendant for $100,000.

The defendant in answer to plaintiff's second amended petition admits that it is a corporation engaged in the business of providing hospital services to the general public; admits that the plaintiff sustained an injury to his right knee as a result of which he came to defendant's hospital for treatment; but denies that it was negligent in any respect in the treatment which it afforded the plaintiff and particularly denies each separate allegation of negligence appearing in said second amended petition. It then denies generally every allegation contained in said petition not expressly admitted to be true.

The case was submitted to the jury on the theory that the resident, Dr. Dattilo, was an employee of the hospital and that the hospital was responsible if the jury found he was negligent in one or more of the particulars set forth in the plaintiff's petition. The jury returned a verdict for the plaintiff in the sum of $45,000.

The defendant thereupon filed a motion for a judgment notwithstanding the verdict and in the alternative, for a new trial.

These two motions go to the heart of the case since the defendant claimed first, that a hospital being a corporation not for profit, could not be held for the negligent acts of a resident doctor and second, it denied that said resident was negligent. At the time this case was tried, this Court had before it a decision of the Mahoning County Court of Appeals upholding the theory that a hospital is liable for the negligence of its employee, a resident doctor, in the giving of an anesthetic. It also had the decision of the Court of Appeals of Summit County which held to the contrary. There was no clear cut decision as to liability of a hospital for the negligent medical treatment of a patient by a doctor employee. In view of the facts contained in the **Avellone v. Hospital** case (165 Oh St 467), the Supreme Court seemed to partially open the door to responsibility of the hospital; and in view of the reasoning of the Mahoning County Court of Appeals in a case quite similar to the case at bar, we determined to follow the latter court's view of the law. Therefore, we charged the jury that the defendant hospital was responsible for the negligent acts of its medical employees. We rejected

the theory that Dr. Battilo was a loaned servant. The instant case was tried in June, 1959; and since the Mahoning County case was then in the Supreme Court, we waited till that Court rendered its decision.

The Supreme Court ruled on said case of **Klema v. Hospital, 170 Oh St 519** (found in the OHIO BAR for April 25, 1960) as follows:

"A corporation not for profit which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of **respondeat superior** liable for the negligent act of its employees irrespective of whether those acts are administrative or medical."

From the above clear statement of the law, the Supreme Court of Ohio answers all of the cases cited and arguments made on behalf of the defendant hospital and leaves no doubt of the correctness of our charge as to the liability of the defendant for the negligence of a resident doctor.

Second: Having now determined that a hospital is liable for the negligence of its servants, does the evidence show negligence of the servant sufficient to submit to a jury?

The plaintiff testified that he was on the 18th day of January, 1956, attempting to put up an awning. He slipped on the ladder and rode the ladder down and came down on an evergreen tree. A piece of tree branch was sticking in his knee about two feet out. He pulled at it and it broke. There was no blood on the broken end of the branch. The defendant was taken at once to Fairview Hospital's emergency room where he told them what happened; "I broke piece of wood in my knee, I think I told them some of the wood was still in there." The plaintiff further testified as follows: "The knee was examined and I was taken to the x-ray room where pictures were taken and brought back to the emergency room and examined again. They put me on a table, stretched my knee and then doctored my knee. This was all done by Dr. Pepiaditakes. Then Dr. Dattilo came. He examined the knee. He did not probe it with his finger. I told both of them that the knee pained me greatly, especially there was great pain when I held my leg out straight. Dr. Dattilo asked, 'Who is your Doc?' I told him Dr. Pekarek. Then he came back, cleaned the wound and stitched my knee and later I was taken home."

Dr. Dattilo testified that he told Dr. Pekarek the wound was about an inch long. He cleaned it and there was no pain in the knee, and he said that he had probed the wound with his gloved little finger and found nothing in the wound. He further testified that Dr. Pekarek told him to put cambriotic medicine on the wound and to stitch it up.

On the other hand, Dr. Pekarek stated that he has no recollection of any call from Dr. Dattilo, but he would not say that he did not call him. A further fact was brought out—that Dr. Pekarek was sick at home and that afternoon Mrs. Kubeck called the Doctor's home and Mrs. Pekarek then called Dr. Bitzan to see the patient. Dr. Bitzan then called at the patient's home. He had talked on the phone with Dr. Dattilo who told him what he had already told Dr. Pekarek, and Dr. Bitzan agreed that the patient should go home. The leg, thereafter, began to swell. In a few days it was so swollen, Kubeck was taken to

St. Alexis Hospital on several occasions and an operation was performed on May 31, 1956, for the purpose of fusing the leg which would make it stiff after the operation. Before closing the wound, a stick of wood was found near the knee which ran along the underside of the lower part of the tibia, which stick was one inch in diameter and five inches long.

The nurse testified that Dr. Dattilo removed some fragments in the cleaning. This was not specifically contradicted, although Dr. Dattilo stated that he probed with his gloved finger in the wound but found nothing. The plaintiff stated that he told both Doctors that the knee pained him especially when he extended the leg.

Besides the above facts and the air pockets shown by the x-ray, Dr. Rosenberg testified that the treatment the plaintiff received that afternoon at the defendant hospital was not in line with good medical practice. The defendant's medical experts disputed Dr. Rosenberg's view by certain testimony made not being here quoted in extenso. The cross-examination, however, of Dr. Dixon, the oldest and most experienced of the defendant's witnesses, was such that he finally had to agree to some extent to plaintiff's view of the situation.

Dr. Dattilo testified that he had received a degree from the University of Modena in medicine but had never been admitted to practice by the State of Ohio. He entered this country in December 1953, at which time he knew no words of English. He had served a one year's internship at St. Alexis Hospital. He then applied for a residency in internal medicine at Fairview but was finally given a residency in surgery. Further evidence proved that he was employed by Fairview Hospital against the recommendantion of Dr. Shelly, who was in charge of investigating the capabilities of doctors for residency for the hospital. He was paid $150.00 per month and besides received certain perquisites that went with the position.

The testimony also shows that when this piece of wood was found, one end was in the politeal soft tissue under or in the back part of the knee (Dr. Sackett). While the last answer of Dr. Dattilo was, "If it was in, you could not miss it." But he did miss it as his report shows.

Considering the whole picture, there is no question that there was ample evidence to submit the case to the jury for its consideration. We, therefore, must overrule defendant's motion for judgment notwithstanding the verdict.

Third: The defendant also claimed as a ground for a new trial that the verdict is not the verdict of the jury. He alleges that the nine who signed the interrogatories did not sign the general verdict.

The general verdict, when the same was returned in open court, was read by the Court. It was signed by all 12 of the jurors. Upon a poll of the 12 as requested by defendant's counsel, one Beatrice Schrect answered that it was not her verdict. Eleven affirmed that it was their verdict.

Sec. 2315.10 R. C., provides that:

"If the disagreement of one-fourth of the jury is not expressed and neither party requires the jury to be polled, or on the polling three-

fourths or more of the jurors answer affirmatively, **the verdict is complete** and the jury shall be discharged from the case."

Thus, 11 jurors affirmed it was their verdict. Counsel at the time examined the verdict, and no objection was made thereto and no exception taken. The jury was then discharged.

Now counsel asserts that the general verdict signed by the 12 was not intended by them to be their verdict—that the real verdict was by 9 of them whose signatures appear above the signatures of the 12 in horizontal order. Affidavits of the jurors were produced which the defendant alleges shows this to be true. One of the 9 so signing having denied that it is her verdict, according to the defendant, leaves only eight as signing the general verdict.

In view of the law as set forth in **Long v. Cassiero, 105 Oh St 123,** and in **Wickert v. Cleveland, 150 Oh St 434,** that a juror may not impeach his own verdict by affidavit or by testimony in open court, defendant's complaint must be dismissed. These cases seem to the Court conclusive of the issues here.

However, the defendant asserts further that on the basis that only nine signed the verdict, one of the nine did not sign the interrogatories. Counsel for both parties in their briefs argued this phase of the case. We will, therefore, consider whether or not there is any merit to defendant's argument even if we agree with the facts to be as alleged.

The defendant argues that since Beatrice Schrect signed the verdict but did not sign the interrogatories, it nullifies the verdict.

However, Ann M. Sidari, who signed the interrogatories, affirmed in the poll of the jury that it was her verdict. Thus, we have the nine who signed the interrogatories affirming that the verdict is their verdict.

The further argument was made that there are two views on the question of interrogatories and their answers in connection with the general verdict of the jury. In Washington, the cases hold that any 9 of the 12 jurors can make a finding on each particular issue in the case. That is, nine can find negligence, a different group of nine can find proximate cause and still a different group of nine can award the damages.

We may philosophize abstractly about the above decisions; but our Ohio Supreme Court has decided the matter as applicable to the facts at bar, even if we take the facts to be as claimed by the defendant.

In the case of **Simpson et al v. Springer, 143 Oh St 324,** nine jurors signed the special interrogatories, but eight of them with another juror who did not sign the interrogatories, signed the general verdict. In that case the syllabus reads as follows:

"The fact that only eight of the nine jurors who concurred in and returned a general verdict for the defendant joined in an answer to a special interrogatory also submitted to the jury, did not vitiate the general verdict so returned and received by the court, no objection having been offered or request made by counsel for plaintiff that the jury be required to continue their deliberations until the interrogatory was answered by all the jurors joining in the general verdict."

In this case, the jury returned a general verdict for the defendant

and nine concurred therein. Of the nine members of the jury who signed the general verdict, only eight signed the interrogatories. Thus, one juror who did not sign the general verdict signed the answers to the interrogatories. Judge Hart in his opinion says (page 328):

"In this case after the verdict and answer to the interrogatory were received by the Court, no objection was offered by counsel for plaintiff, and no request was made that the jury be required to continue its deliberations until the interrogatory was answered by all the jurors joining in the general verdict. Under such circumstances, the most that can be claimed is that there was a failure to answer the interrogatory."

This decision is exactly like the case at bar. There was no objection to the receipt of the interrogatories or of the general verdict, and there was no request made of the Court to have the jury return to the jury room and debate further.

In the case of **Leach v. Nanna, 100 Oh Ap 26,** the syllabus is self-explanatory, to wit:

"Where particular questions of fact are submitted to a jury finding a general verdict to be discharged without asking the court to have the question answered, he is deemed to have waived the right to have such question answered."

In this case, the Court, in a well-reasoned opinion reviews all the Ohio cases. This Court, therefore, will not quote them here.

The second case that involved the same question was by the Summit County Court of Appeals found in **Plaster v. Akron Union Depot Company, 101 Oh Ap 27.** In this case 11 jurors answered the interrogatory but only 8 of the 11 signed the general verdict. Counsel objected strenuously to the receipt of said verdict.

Judge Hunsicker reviews and quotes from both the Simpson case and the Washington and Wisconsin rulings. He also reviews **Crayton v. Kiehls, 60 Oh Ap 86.** The Court could not understand why all of the 11 answered the interrogatory and only 8 signed the verdict. Since there was no waiver by the counsel for the defendant, the verdict was set aside, and the case remanded for a new trial.

In the instant case it will be observed that there was no objection to the receipt of either the interrogatories and their answers and of the general verdict. The defendant's counsel insisted on a polling of the jurors on the general verdict. There was no request made by counsel for the defendant that the jurors be required to continue its deliberations until the interrogatories were answered by all the jurors joining in the general verdict.

It may be noted in addition to the above technical phase of the case that Ann M. Sidaria signed the interrogatories but did not sign the verdict later declared when the jurors were polled that the verdict was **her verdict.** She changed her mind as did Beatrice Schrect, who signed the general verdict but did not sign the interrogatories. It will be noted in the polling that the general verdict was the verdict of all except Beatrice Schrect, even though she had previously signed said verdict.

It must also be noted that the interrogatories were prepared by the defendant's counsel in which it was set forth:

"In the event you reach a general verdict in this case, you are required to answer the following question of interrogatory. When nine or more of your members (NOT NECESSARILY THE SAME NINE MEMBERS WHO CONCURRED IN THE GENERAL VERDICT) have agreed upon your answer you will follow the instructions and write the answer agreed upon below the question and those of you who concurred in the answer are required to sign your name in the space provided below."

In effect, the defendant's counsel told the jury that the nine who signed the verdict need not sign the interrogatory. Counsel now takes the opposite view and states that all who signed the interrogatory must sign the verdict. It seems to us that this is a waiver of any rights in respect thereto, but we need not decide whether there was a waiver by the word as such in the interrogatory since there were no objections to the receipt of the verdict and receipt of the interrogatories by the Court; and we hold that under such circumstances, our Supreme Court in Simpson v. Springer, supra, has decided the question for us.

Fourth: Did the Court err in its giving to the jury plaintiff's separate requests to charge before argument. These requests were in proper form and applied to the facts in the case and, therefore, were properly given.

Fifth: Did the Court err in failing to give to the jury certain of defendant's requests to charge before argument?

The defendant's requests which were refused were based on Rush v. Hospital, Summit Co., and on the loaned servant theory. Since we charged that Dr. Dattilo was an employee of the hospital and if negligent and his negligence was the proximate cause of plaintiff's injury, the hospital was liable, we refused to charge as requested. The outcome of the Klema case justifies our position.

Sixth: It is further alleged as a ground for a new trial that passion and prejudice was aroused by the argument of plaintiff's counsel.

It will be noted that there was no objection at the time of the argument. The defendant's counsel feel the hurt to their case after the verdict. It was a powerful argument; but under the evidence, it was not legally objectionable. We are certain that defendant's chief counsel, a wise, efficient trial lawyer, would have argued along the same lines. What could plaintiff's counsel say other than he did in such a situation, especially when you have a very nice-appearing, gentlemanly doctor testify that the stick of wood extracted from plaintiff's leg was in his possession when he was visited by plaintiff's counsel who examined said piece of wood in his presence. He was told it would be needed at the trial a month hence. During the said 30 days, he destroyed said piece of wood. The whole situation as to the medical testimony was such that strong language could be used. Therefore, this Court cannot say the argument was out of bounds of propriety.

Having arrived at the above conclusions, we must and do overrule each motion of the defendant.

Exceptions will be saved the defendant.